**DOCKETED**

**NOV 4 2002**

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**02 C 7921**

MICHAEL COKENOUR, on behalf of himself )
and a class of persons similarly situated )
                                 )
                 Plaintiff, )
                                 )
      v.                             )
                                 )
HOUSEHOLD INTERNATIONAL, INC., )
WILLIAM F. ALDINGER, ROBERT J. )
DARNALL, GARY G. DILLON, ANTHEA )
DISNEY, JOHN A. EDWARDSON, J. )
DUDLEY FISHBURN, CYRUS F. )
FREIDHEIM, JR., JAMES H. GILLIAM, JR., )
LOUIS E. LEVY, GEORGE A. LORCH, )
JOHN D. NICHOLS, JAMES B. PITBLADO, )
LARREE M. RENDA, S. JAY STEWART, )
DAVID A. SCHOENHOLZ, STEVEN L. )
MCDONALD, MARY E. BILBREY, )
MICHAEL A. DELUCA, John Does 1-30, and )
Richard Roes 1-30 )
                                 )
               Defendant. )
                                 )
                                 )

No.     **JUDGE ZAGEL**

COMPLAINT FOR VIOLATIONS OF
THE EMPLOYEE RETIREMENT
INCOME SECURITIES ACT

<u>CLASS ACTION COMPLAINT</u>

Magistrate Judge Nolan



For his Complaint against Defendants, Plaintiff alleges as follows:

## I. **NATURE OF ACTION**

1.      This is a civil enforcement action brought pursuant to § 502 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132.

2.      This lawsuit concerns the Household International, Inc. Tax Reduction Investment Plan (the "Plan"), a retirement plan established by Household International, Inc. ("Household" or the "Company") as a benefit for its employees to permit tax-advantaged savings for retirement and other long-term goals. The Plan is a defined contribution plan covering most of Household's full- and part-time employees in the United States.

COMPLAINT FOR VIOLATIONS OF THE EMPLOYEE
RETIREMENT INCOME SECURITIES ACT; Page 1

1-1

3.      Plaintiff sues William F. Aldinger, Robert J. Darnall, Gary G. Dillon, Anthea Disney, John A. Edwardson, J. Dudley Fishburn, Cyrus F. Freidheim, Jr., James H. Gilliam, Jr., Louis E. Levy, George A. Lorch, John D. Nichols, James B. Pitblado, Larree M. Renda, S. Jay Stewart, who are the directors and/or officers of the Company; David A. Schoenholz, Steven L. McDonald, Mary E. Bilbrey, and Michael A. Deluca, the administrators and/or directors of the Plan; the Company; John Does 1-30, the individual members of the Company's Board of Directors who participated in the Plan's investment policies during the Class Period, whose identities are currently not known; and Richard Roes 1-30, the individual members of the Company's Administrative and Investment Committee of the Household International Tax Reduction Investment Plan during the Class Period, whose identities are currently not known.

4.      The Plaintiff, Michael Cokenour, is a former employee of Household and a participant in the Plan.  Plaintiff alleges that Defendants, Household itself, and certain individuals are fiduciaries of the Plan, and breached their fiduciary duties to him and to the other participants and beneficiaries of the Plan, in violation of ERISA § 409, 29 U.S.C. § 1109, in connection with the Plan's holdings of Household stock.  Plaintiff alleges that Defendants are obliged under ERISA to make the Plan whole for the losses suffered as a result of Defendants' failure to discharge their fiduciary obligations.

5.      Because his claims apply to the participants and beneficiaries as a whole, and because ERISA authorizes a participant such as Mr. Cokenour to sue for plan-wide relief for breaches of fiduciary duty, he brings this action on behalf of himself and all the participants and beneficiaries of the Plan during the relevant period.

## II. JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1131 (federal question) and the specific jurisdictional statute for claims of this type, ERISA § 502(e)(1) (29 U.S.C. § 1132(e)(1)).

COMPLAINT FOR VIOLATIONS OF THE EMPLOYEE
RETIREMENT INCOME SECURITIES ACT; Page 2

7.    This Court has personal jurisdiction over Defendants because, pursuant to 29 U.S.C. § 1332(e)(2), one or more of the Defendants may be found in this District. Household is headquartered in this District, Defendants systematically and continuously do business in this District, and the case arises out of Defendants' acts within this District.

8.    Venue is properly laid in this District pursuant to ERISA § 502(e)(2) (29 U.S.C. § 1132(e)(2)) because the Plan was administered in this District, some or all of the fiduciary breaches for which relief is sought occurred in this District, and Household is found in this District.

## III. PARTIES

### Plaintiff

9.    Plaintiff is a resident of Illinois. He worked for Household from October 1990 through February 1995.

10.    Plaintiff is a "participant" in the Plan within the meaning of ERISA § 3(7) 29 U.S.C. § 1002(7)). During the Class Period, Plaintiff's interest in the Plan was invested in Household common stock.

### Defendants

11.    Defendant Household International, Inc. is a Delaware corporation with its principal place of business located at 2700 Sanders Road, Prospect Heights, Illinois 60070. The Company is a non-operating holding company. Household's subsidiaries primarily provide middle-market consumers with several types of loan products in the United States, the United Kingdom, and Canada.

12.    Defendant William F. Aldinger was, at times relevant hereto, the Company's Chairman and Chief Executive Officer. Upon information and belief, Aldinger was a fiduciary of the Plan within the meaning of ERISA in that he exercised discretionary authority with respect to: (i) management and administration of the Plan; and/or (ii) management and disposition of the

COMPLAINT FOR VIOLATIONS OF THE EMPLOYEE
RETIREMENT INCOME SECURITIES ACT; Page 3

Plan's assets. Aldinger participated in communications to Plan participants, including, for example, by execution of the Company's Registration Statement on Form S-8 relating to shares of Household stock to be issued to Plan participants. As Chief Executive Officer, Aldinger was responsible for the appointment of members of the Plan's Administrative and Investment Committee.

13. Defendant David A. Schoenholz was, at all times relevant hereto, the Company's President and Chief Operating Officer. Upon information and belief, Schoenholz was a fiduciary of the Plan within the meaning of ERISA in that he exercised discretionary authority with respect to: (i) management and administration of the Plan; and/or (ii) management and disposition of the Plan's assets. Schoenholz participated in communications to Plan participants, including, for example, by execution of the Company's Registration Statement on Form S-8 relating to shares of Household stock to be issued to Plan participants.

14. Defendant Steven L. McDonald was, at times relevant hereto, the Company's Senior Vice President and Chief Accounting Officer. Upon information and belief, McDonald was a fiduciary of the Plan within the meaning of ERISA in that he exercised discretionary authority with respect to: (i) management and administration of the Plan; and/or (ii) management and disposition of the Plan's assets. McDonald participated in communications to Plan participants, including, for example, by execution of the Company's Registration Statement on Form S-8 relating to shares of Household stock to be issued to Plan participants.

15. (a) Defendant Robert J. Darnall was, at times relevant hereto, a member of the Company's Board of Directors. Upon information and belief, Darnall was a fiduciary of the Plan within the meaning of ERISA in that he exercised discretionary authority with respect to: (i) management and administration of the Plan; and/or (ii) management and disposition of the Plan's assets. Darnall participated in communications to Plan participants, including, for example, by execution of the Company's Registration Statement on Form S-8 relating to shares of Household stock to be issued to Plan participants.

COMPLAINT FOR VIOLATIONS OF THE EMPLOYEE
RETIREMENT INCOME SECURITIES ACT; Page 4

(b)     Defendant Gary G. Dillon was, at times relevant hereto, a member of the Company's Board of Directors.  Upon information and belief, Dillon was a fiduciary of the Plan within the meaning of ERISA in that he exercised discretionary authority with respect to: (i) management and administration of the Plan; and/or (ii) management and disposition of the Plan's assets.  Dillon participated in communications to Plan participants, including, for example, by execution of the Company's Registration Statement on Form S-8 relating to shares of Household stock to be issued to Plan participants.

(c)     Defendant Anthea Disney was, at times relevant hereto, a member of the Company's Board of Directors.  Upon information and belief, Disney was a fiduciary of the Plan within the meaning of ERISA in that she exercised discretionary authority with respect to: (i) management and administration of the Plan; and/or (ii) management and disposition of the Plan's assets.  Disney participated in communications to Plan participants, including, for example, by execution of the Company's Registration Statement on Form S-8 relating to shares of Household stock to be issued to Plan participants.

(d)     Defendant John A. Edwardson was, at times relevant hereto, a member of the Company's Board of Directors.  Upon information and belief, Edwardson was a fiduciary of the Plan within the meaning of ERISA in that he exercised discretionary authority with respect to:  (i) management and administration of the Plan; and/or (ii) management and disposition of the Plan's assets.  Edwardson participated in communications to Plan participants, including, for example, by execution of the Company's Registration Statement on Form S-8 relating to shares of Household stock to be issued to Plan participants.

(e)     Defendant J. Dudley Fishburn was, at times relevant hereto, a member of the Company's Board of Directors.  Upon information and belief, Fishburn was a fiduciary of the Plan within the meaning of ERISA in that he exercised discretionary authority with respect to: (i) management and administration of the Plan; and/or (ii) management and disposition of the Plan's assets.  Fishburn participated in communications to Plan participants, including, for

COMPLAINT FOR VIOLATIONS OF THE EMPLOYEE
RETIREMENT INCOME SECURITIES ACT; Page 5

example, by execution of the Company's Registration Statement on Form S-8 relating to shares of Household stock to be issued to Plan participants.

(f)     Defendant Cyrus F. Freidheim, Jr. was, at times relevant hereto, a member of the Company's Board of Directors.  Upon information and belief, Freidheim was a fiduciary of the Plan within the meaning of ERISA in that he exercised discretionary authority with respect to: (i) management and administration of the Plan; and/or (ii) management and disposition of the Plan's assets.  Freidheim participated in communications to Plan participants, including, for example, by execution of the Company's Registration Statement.

(g)     Defendant James H. Gilliam, Jr. was, at times relevant hereto, a member of the Company's Board of Directors.  Upon information and belief, Gilliam was a fiduciary of the Plan within the meaning of ERISA in that he exercised discretionary authority with respect to: (i) management and administration of the Plan; and/or (ii) management and disposition of the Plan's assets.  Gilliam participated in communications to Plan participants, including, for example, by execution of the Company's Registration Statement on Form S-8 relating to shares of Household stock to be issued to Plan participants.

(h)     Defendant Louis E. Levy was, at times relevant hereto, a member of the Company's Board of Directors.  Upon information and belief, Levy was a fiduciary of the Plan within the meaning of ERISA in that he exercised discretionary authority with respect to: (i) management and administration of the Plan; and/or (ii) management and disposition of the Plan's assets.  Levy participated in communications to Plan participants, including, for example, by execution of the Company's Registration Statement on Form S-8 relating to shares of Household stock to be issued to Plan participants.

(i)     Defendant George A. Lorch was, at times relevant hereto, a member of the Company's Board of Directors.  Upon information and belief, Lorch was a fiduciary of the Plan within the meaning of ERISA in that he exercised discretionary authority with respect to: (i) management and administration of the Plan; and/or (ii) management and disposition of the

COMPLAINT FOR VIOLATIONS OF THE EMPLOYEE
RETIREMENT INCOME SECURITIES ACT; Page 6

Plan's assets. Lorch participated in communications to Plan participants, including, for example, by execution of the Company's Registration Statement on Form S-8 relating to shares of Household stock to be issued to Plan participants.

        (j)      Defendant John D. Nichols was, at times relevant hereto, a member of the Company's Board of Directors. Upon information and belief, Nichols was a fiduciary of the Plan within the meaning of ERISA in that he exercised discretionary authority with respect to: (i) management and administration of the Plan; and/or (ii) management and disposition of the Plan's assets. Nichols participated in communications to Plan participants, including, for example, by execution of the Company's Registration Statement on Form S-8 relating to shares of Household stock to be issued to Plan participants.

        (k)      Defendant James B. Pitblado was, at times relevant hereto, a member of the Company's Board of Directors. Upon information and belief, Pitblado was a fiduciary of the Plan within the meaning of ERISA in that he exercised discretionary authority with respect to: (i) management and administration of the Plan; and/or (ii) management and disposition of the Plan's assets. Pitblado participated in communications to Plan participants, including, for example, by execution of the Company's Registration Statement on Form S-8 relating to shares of Household stock to be issued to Plan participants.

        (l)      Defendant Larree M. Renda was, at times relevant hereto, a member of the Company's Board of Directors. Upon information and belief, Renda was a fiduciary of the Plan within the meaning of ERISA in that she exercised discretionary authority with respect to: (i) management and administration of the Plan; and/or (ii) management and disposition of the Plan's assets. Renda participated in communications to Plan participants, including, for example, by execution of the Company's Registration Statement on Form S-8 relating to shares of Household stock to be issued to Plan participants.

        (m)      Defendant S. Jay Stewart was, at times relevant hereto, a member of the Company's Board of Directors. Upon information and belief, Stewart was a fiduciary of the

COMPLAINT FOR VIOLATIONS OF THE EMPLOYEE
RETIREMENT INCOME SECURITIES ACT; Page 7

Plan within the meaning of ERISA in that he exercised discretionary authority with respect to: (i) management and administration of the Plan; and/or (ii) management and disposition of the Plan's assets. Stewart participated in communications to Plan participants, including, for example, by execution of the Company's Registration Statement on Form S-8 relating to shares of Household stock to be issued to Plan participants.

16. Defendants John Does 1-30 are residents of the United States, and are or were members of the Company's Board of Directors during the Class Period. Their identity is now unknown to Plaintiff. Once their identity is discovered, Plaintiff will seek leave to amend to join them under their true names.

17. (a) Defendant Mary Bilbrey was, at times relevant hereto, a member of the Administrative and Investment Committee of the Household International Tax Reduction Investment Plan and a member of the Administrative Committee of the Household International Retirement Income Plan. Upon information and belief, Bilbrey was a fiduciary of the Plan within the meaning of ERISA in that she exercised discretionary authority with respect to: (i) management and administration of the Plan; and/or (ii) management and disposition of the Plan's assets.

(b) Defendant Michael A. Deluca was, at times relevant hereto, a member of the Administrative and Investment Committee of the Household International Tax Reduction Investment Plan and a member of the Administrative Committee of the Household International Retirement Income Plan. Upon information and belief, Deluca was a fiduciary of the Plan within the meaning of ERISA in that he exercised discretionary authority with respect to: (i) management and administration of the Plan; and/or (ii) management and disposition of the Plan's assets.

18. Defendants Richard Roes 1-30 are residents of the United States and are or were members of the Company's Administrative and Investment Committee during the Class Period.

COMPLAINT FOR VIOLATIONS OF THE EMPLOYEE
RETIREMENT INCOME SECURITIES ACT; Page 8

Their identity is now unknown to Plaintiff. Once their identity is discovered, Plaintiff will seek leave to amend to join them under their true names.

19. The Defendants referred to in paragraphs 12-18 are collectively referred to herein as the "Individual Defendants."

## IV. APPROPRIATENESS OF CLASS ACTION

20. Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of himself and a class (the "Class") of all persons who are or were participants in or beneficiaries of the Plan at any time from October 23, 1997, through the present (the "Class Period"). Excluded from the Class are Household's officers and directors and any fiduciaries during the Class Period, including members of their immediate families and their legal representatives, heirs, successors, or assigns.

21. Plaintiff meets the prerequisites to bring this action on behalf of the Class because:

- **Numerosity.** The Class consists of thousands of individuals and is so numerous that joinder of all members as individual Plaintiffs is impracticable.

- **Commonality.** There are questions of law and fact common to the Class.

- **Typicality.** Plaintiff's claims are typical of the claims of the Class.

- **Adequacy.** Plaintiff will fairly and adequately protect the interests of the Class. He has no interests that are antagonistic to or in conflict with the interests of the Class as a whole, and he has engaged competent counsel, highly experienced in ERISA class actions concerning employer securities in 401(k) plans, as well as in other class and complex litigation, to ensure protection of the interests of the Class as a whole.

22.     As an ERISA breach of fiduciary duty action for plan-wide relief, this is a classic Rule 23(b)(1)(B) class action. The prosecution of separate actions by the members of the Class would create a risk of adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests. However, this action is also maintainable as a class action under the other subsections of Rule 23(b):

- **Rule 23(b)(1)(A).** The prosecution of separate actions by the members of the Class would create a risk of inconsistent or varying adjudications with respect to the individual members of the Class, which would establish incompatible standards of conduct for Defendants.

- **Rule 23(b)(2).** The Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Class as a whole.

- **Rule 23(b)(3).** Questions of law and fact common to members of the Class predominate over any questions affecting only individual members, and the class action is superior to other available methods for the fair and efficient adjudication of the controversy.

23.     There are one or more putative or certified class action securities cases pending against Household and one or more of the Individual Defendants. The claims herein are brought under ERISA and related principles of federal common law and are not being asserted by the plaintiffs in those other class actions. The named plaintiffs in those class actions do not adequately represent the Plaintiff or the Class herein with respect to ERISA claims and may be subject to defenses and limitations of liability under the PSLRA and other statutes and rules that do not apply to the claims asserted herein.

COMPLAINT FOR VIOLATIONS OF THE EMPLOYEE
RETIREMENT INCOME SECURITIES ACT; Page 10

24.     Under and as required by ERISA, Defendants carry insurance for claims asserted herein that may not be available to the Defendants in the securities class actions.

25.     The Class contains persons who made purchases within the time frame implicated in the securities class actions, as well as persons who made no purchases within the securities class period, and persons who purchased both within and outside the securities class action time frame.

26.     There are people in this Class who are not members of the classes or putative classes in the securities class action cases.

27.     There are Defendants in this case who are not Defendants in the securities class actions.

## V. THE PLAN

28.     By information and belief, the Plan is an "employee pension benefit plan" within the meaning of ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A). Further, it is an "eligible individual account plan" within the meaning of ERISA § 407(d)(3), 29 U.S.C. § 1107(d)(3), and also a "qualified cash or deferred arrangement" within the meaning of I.R.C. § 401(k), 26 U.S.C. § 401(k). The Plan is not a party to this action. Pursuant to ERISA, however, the relief requested in this action is for the benefit of the Plan.

29.     Household is the sponsor of the Plan. Its Employer Identification Number is 36-3121988, and the Plan Number is 005.

30.     Subject to Internal Revenue Service limitations, participants of the Plan were permitted to contribute before and after tax payroll deductions to the Plan. Participants directed the investment of their contributions to various investment options available in the Plan.

31.     The Plan provided for investment in one or more of several "funds." Fund A was the Household International, Inc. Common Stock Fund that was to be primarily composed of

COMPLAINT FOR VIOLATIONS OF THE EMPLOYEE
RETIREMENT INCOME SECURITIES ACT; Page 11

investments in Company stock. The remaining investment options consisted of other mutual and money market funds.

32. The Company matched the participants' contributions, at certain specified percentages, by making contributions to the participants' accounts in the Household International, Inc. Common Stock Fund.

## VI. DEFENDANTS' FIDUCIARY STATUS

33. During the Class Period, the Defendants had discretionary authority and control respecting management of the Plan and/or exercised authority and control respecting the management or disposition of the Plan's assets, and had discretionary authority or responsibility for the administration of the Plan.

34. During the Class Period, all of the Defendants acted as fiduciaries of the Plan pursuant to ERISA § 3(21)(A) (29 U.S.C. § 1002(21)(A)) and the law interpreting that section.

35. ERISA requires every plan to provide for one or more named fiduciaries, who will have "authority to control and manage the operation and administration of the plan." ERISA § 402(a)(1) (29 U.S.C. § 1102(a)(1)). Instead of delegating fiduciary responsibility for the Plan to external service providers, the Company chose to comply with the requirement of § 402(a)(1) by internalizing the fiduciary function. It did so in various ways.

36. First, during the Class Period, the Company, pursuant to the Plan, designated the Administrative and Investment Committee as Plan administrator, thereby making the members of that committee named fiduciaries of the Plan. According to the Plan, the Administrative and Investment Committee consisted of at least three employees of the Company appointed by its Chief Executive Officer, and serving at the pleasure of the Company. The actions of the employee-fiduciaries were on behalf of and attributable to the Company.

37. Second, ERISA treats as fiduciaries not only persons explicitly named as fiduciaries under § 402(a)(1), but also any other persons who act in fact as fiduciaries, i.e.,

COMPLAINT FOR VIOLATIONS OF THE EMPLOYEE
RETIREMENT INCOME SECURITIES ACT; Page 12

perform fiduciary functions. ERISA § 3(21)(A)(i) (29 U.S.C. § 1002(21)(A)(i)) makes a person a fiduciary "to the extent . . . he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management of disposition of its assets." During the Class Period, the Defendants performed fiduciary functions under this standard, and thereby also acted as fiduciaries under ERISA, by, among other things, appointing Plan administrators and making materially misleading statements to participants regarding Plan assets, including Company stock, and the Company's financial results and business prospects.

38. Further, Household and the Individual Defendants performed fiduciary functions by communicating with Plan participants with respect to the Plan, including, without limitation, through Household's Form S-8 Registration Statements, Prospectus, and Summary Plan Description.

39. In fulfilling their fiduciary duties under ERISA to provide periodic plan information, the Form S-8 Registration Statements, Prospectus, and Summary Plan Descriptions issued by Defendants expressly incorporated by reference all of the documents filed by the Company with the Securities and Exchange Commission (the "SEC") under the federal securities laws. These filings contained at least the following material misrepresentations and/or omitted the following material information concerning the Company's financial condition:

a. That the Company's income and assets were overstated due to improper revenue recognition and other accounting improprieties in violation of Generally Accepted Accounting Principles;

b. That the Company was engaging in predatory lending practices, to maximize short-term revenues, at the risk and expense of long-term Company stability and performance, and exposing the Company to enormous potential liability.

COMPLAINT FOR VIOLATIONS OF THE EMPLOYEE
RETIREMENT INCOME SECURITIES ACT; Page 13

40.     Pursuant to statutory duties of disclosure, Defendants made numerous fiduciary communications to Plan participants, including Summary Plan Descriptions which incorporated by reference the Company's SEC filings.  These communications included statements regarding Company stock as an investment alternative, which were materially false and misleading.

41.     Under ERISA, in various circumstances, non-fiduciaries who knowingly participate in fiduciary breaches may themselves be liable.  To the extent any of the Defendants are held not to be fiduciaries, they remain liable as non-fiduciaries who knowingly participated in the fiduciary breaches described below.

## VII. <u>FACTUAL BACKGROUND TO FIDUCIARY BREACHES</u>

42.     During the Class Period, and before, Household, a non-operating holding company, through its subsidiaries, provided middle-market consumers with several types of loan products in the United States, the United Kingdom, and Canada.

43.     During the Class Period, Household employed approximately 32,000 people.  In retaining existing employees and in recruiting prospective employees, Household told employees that they would be expected to work hard but that they would be well rewarded for their efforts.

44.     During the Class Period, Household touted its performance, reporting to employees, other investors, and the market that Household was experiencing outstanding, sustainable growth, and was continuing to achieve positive operating results.  Representative examples include Household's second quarter earnings announcement, dated July 18, 2001, entitled "Household Reports Record Second Quarter Results; 12th Consecutive Record Quarter." This was followed, on October 17, 2001, by the Company's third quarter earnings announcement, entitled "Household Reports Highest Quarterly Net Income in its 123-year History."

45.     During the Class Period, and before, however, Household and its executive officers knew or should have known about questionable and potentially unlawful accounting and

COMPLAINT FOR VIOLATIONS OF THE EMPLOYEE
RETIREMENT INCOME SECURITIES ACT; Page 14

lending practices that made Household's stock an inappropriate Plan investment. These practices, which have now been widely reported in the financial press, included, but were not limited to, the following:

a. The manipulation of earnings over an eight-year period, from 1994 into 2002, through the use of improper accounting techniques to improperly recognize approximately $386 million in revenue from MasterCard/Visa co-branding and affinity credit card relationships and a marketing agreement with a third-party credit card marketing company;

b. Treating payments made in connection with these agreements that were entered into between 1992 and 1999 as prepaid assets and amortizing them in accordance with the underlying economics of the agreements; and

c. Allegedly engaging in predatory lending practices, such as concealing from consumers the true cost of loans, tacking on thousands of dollars for insurance policies that weren't required, inadequately disclosing closing costs, and charging borrowers thousands of dollars in excessive points and prepayment penalties.

46. The consequences of Household's misconduct included, but were not limited to the following:

a. A restatement by Household of eight years of financial results, from 1994 to 2002, reducing $386 million in revenues;

b. Amendment of its financial statements for 1999 through the first fiscal quarter of 2002 to reflect the restatements;

c. The dismissal of Household's auditor, Arthur Andersen LLP, in March 2002; and

d. Household's announcement on October 11, 2002, that it has reached a preliminary agreement with a multi-state group of state attorneys general

COMPLAINT FOR VIOLATIONS OF THE EMPLOYEE
RETIREMENT INCOME SECURITIES ACT; Page 15

and regulatory agencies, representing a nationwide resolution of issues related to the Company's non-prime consumer lending businesses. Upon finalization of the proposed agreement, Household would establish a fund of up to $484 million to be divided among the participating states.

47.     The "results" of the improper accounting and lending practices were communicated to Plan participants by Defendants, including through periodic SEC reports filed from, and after, the commencement of the Class Period, which communications were materially false and misleading as a result.

48.     In response to the subsequent disclosure of its misconduct, Household's stock price fell.

49.     The facts, as alleged, demonstrate that the Company was being seriously mismanaged, and faced a risk of collapse, and therefore, that Company stock no longer was a prudent investment for Plan assets.

50.     In short, by no later than the beginning of the Class Period, Household and the Individual Defendants knew, or should have known, that Household's stock was a highly inappropriate and imprudent investment for a long-term retirement savings plan such as the Plan because of the improper accounting activity described above and other questionable business practices. Despite this, contrary to the requirements of ERISA, Defendants continued to offer Household's stock as a Plan investment alternative, continued to cause Household matching contributions to be invested in Household stock, and failed to correct the materially misleading statements that had been made to Plan participants.

51.     Through these actions, Defendants failed to discharge their duties as Plan fiduciaries. An adequate investigation would have revealed to a reasonable fiduciary that the investment at issue was improvident. A prudent fiduciary acting under similar circumstances would have acted to protect participants against unnecessary losses, and would have made a different investment decision.

COMPLAINT FOR VIOLATIONS OF THE EMPLOYEE
RETIREMENT INCOME SECURITIES ACT; Page 16

## VIII. CLAIMS FOR RELIEF

52.     ERISA § 404(a)(1)(A) (29 U.S.C. § 1104(a)(1)(A)) imposes on a plan fiduciary a duty of loyalty – that is, a duty to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . for the exclusive purpose of . . . providing benefits to participants and its beneficiaries . . . ." Section 404(a)(1)(B) (29 U.S.C. § 1104(a)(1)(B)) also imposes on a plan fiduciary a duty of prudence – that is, a duty to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man, acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims . . . ."

53.     A plan fiduciary's duties of loyalty and prudence include a duty to disclose and inform, and provide truthful and accurate information regarding the plan, and plan benefits. This duty entails: (1) a negative duty not to misinform; (2) an affirmative duty to inform when the fiduciary knows or should know that silence might be harmful; and (3) a duty to convey complete and accurate information material to the circumstances of participants and beneficiaries. This duty to disclose and inform recognizes the disparity that may exist, and in this case did exist, between the training and knowledge of the fiduciaries, on the one hand, and the participants and beneficiaries, on the other. In a plan with various funds available for investment, this duty to inform and disclose also includes: (1) the duty to impart to plan participants material information of which the fiduciary has or should have knowledge that is sufficient to apprise the average plan participant of the risks associated with investing in any particular fund; and (2) the duty not to make material misrepresentations.

54.     It is the core of a fiduciary's responsibility to disclose complete and correct material information. A fiduciary has an obligation to accurately convey material information to participants, including material information that the participant did not specifically request, if the fiduciary knew, or should have known that his or her failure to convey the information would be

COMPLAINT FOR VIOLATIONS OF THE EMPLOYEE
RETIREMENT INCOME SECURITIES ACT; Page 17

harmful to participants. A fiduciary must take action to protect participants against losses when he or she knows or should know of potentially ruinous facts regarding the company that imperil plan assets, as alleged here.

55.     A fiduciary's duties of loyalty and prudence also entail a duty to conduct an independent investigation into, and continually to monitor, the merits of all the investment alternatives in the plan, including employer securities, to ensure that each investment is a suitable and prudent option for the plan. Defendants breached this duty of investigation and monitoring with respect to Company stock. By no later than the beginning of the Class Period, Defendants reasonably could not have made a determination that Company stock was a suitable and prudent investment for the Plan, either for a participant's discretionary account or for the match. By the beginning of the Class Period, if not before, Company stock was plainly an unsuitable and imprudent investment option for the Plan.

56.     By no later than the commencement of the Class Period, Defendants breached their fiduciary duties to disclose and inform with respect to the Plan's use of employer stock as a Plan investment. During the Class Period, and before, any investment in employer stock in the Plan was an undiversified investment in a single company's stock. As a result, any such investment carried with it an inherently high degree of risk. These inherent risks made Defendants' duty to provide complete and accurate information about investing in Company stock even more important than would otherwise be the case.

57.     Rather than providing complete and accurate information to the Plan's participants regarding the risks of investing in Company stock in the Plan, Defendants failed to provide material information, and misled participants about the appropriateness of investing in Company stock. Defendants provided inaccurate and incomplete information to participants regarding Defendants' earnings prospects and business condition, and the likely performance of the stock, thereby encouraging participants to continue to make and to maintain substantial investments in Company stock in the Plan.

COMPLAINT FOR VIOLATIONS OF THE EMPLOYEE
RETIREMENT INCOME SECURITIES ACT; Page 18

58.     The fiduciary duty of loyalty also entails a duty to avoid conflicts of interest and to resolve them promptly when they occur.  A fiduciary must always administer a plan with an "eye single" to the interests of the participants and beneficiaries, regardless of the interests of the fiduciaries themselves or the plan sponsor.

59.     Defendants also breached their fiduciary duties to avoid conflicts of interest and to promptly resolve them when they occur by continuing to allow Company stock as a Plan investment during the Class Period, by failing to engage independent fiduciaries who could make independent judgments concerning the Plan's investment in Company stock and the information provided to participants and beneficiaries concerning it, and, generally, by failing to take the steps that were necessary to ensure that the fiduciary of the Plan did not suffer from a conflict of interest, including the notification of the Department of Labor of the questionable transactions which made employer stock an unsuitable investment for the Plan.

60.     Defendants also breached their fiduciary duties by continuing to offer Company stock as an investment option when they knew or should have known that it no longer was prudent to do so, by imprudently directing the investment of Plan assets in Company stock, and by failing to monitor on an on-going basis the prudence of investment in Company stock or the offering of Company stock as a Plan investment alternative.  Defendants knew or should have known that Company's stock was an inappropriate Plan investment due to the improper accounting and lending practices alleged herein.

61.     The Company and its Chief Executive Officer further breached their fiduciary duties by not monitoring or putting in place procedures to monitor the actions of the Investment and Administrative Committee, and other Plan fiduciaries.

62.     Had Defendants properly discharged their fiduciary duties, including by providing full and accurate disclosure of material facts concerning investment in Company stock, eliminating Company stock as an investment alternative when it became imprudent and divesting from Company stock when such investment became imprudent, the Plan would have avoided a

COMPLAINT FOR VIOLATIONS OF THE EMPLOYEE
RETIREMENT INCOME SECURITIES ACT; Page 19

substantial portion of the losses that it has suffered through the continued investment in Company stock.

## IX.  CAUSATION

63.    The Plan suffered a loss because substantial assets in the Plan were invested in Company stock during the Class Period, notwithstanding the improvidence of the investment, in violation of Defendants' fiduciary duties. This loss was reflected in diminished account balances of Plan participants.

64.    Defendants are responsible for all losses caused by the investment of matching contributions in Company stock during the Class Period, as Defendants controlled the investment, and the investment was imprudent.

65.    Defendants also are responsible for losses caused by participant direction of investment in Company stock, because Defendants failed to take the necessary and required steps to ensure effective and informed independent participant control over such assets in their individual Plan accounts, as required by ERISA § 404(c), and the regulations promulgated thereunder.  Defendants concealed material, non-public facts from participants, and provided misleading, inaccurate, and incomplete information to them regarding Company stock.  As a consequence, participants did not exercise independent control over the investment in Company stock, and Defendants remain liable under ERISA for losses caused by such investment.

66.    Defendants' materially deceptive, and misleading statements, acts, and omissions misinformed Plaintiff and the other Class members about the prudence of making and maintaining investments in Company stock in the Plan.

## X.  REMEDY FOR BREACHES OF FIDUCIARY DUTY

67.    ERISA § 502(a)(2) (29 U.S.C. § 1132(a)(2)) authorizes a plan participant to bring a civil action for appropriate relief under section 409 (29 U.S.C. § 1109).  Section 409 requires "any person who is a fiduciary . . . who breaches any of the . . . duties imposed upon fiduciaries

COMPLAINT FOR VIOLATIONS OF THE EMPLOYEE
RETIREMENT INCOME SECURITIES ACT; Page 20

. . . to make good to such plan any losses to the plan . . . ." Section 409 also authorizes "such other equitable or remedial relief as the court may deem appropriate . . . ."

68.     With respect to the calculation of the losses to a plan, breaches of fiduciary duty result in a presumption that, but for the breaches of fiduciary duty, the participants and beneficiaries in the plan would not have made or maintained its investments in the challenged investment and, where alternative investments were available, that the investments made or maintained in the challenged investment would have instead been made in the most profitable alternative investment available. In this way, the remedy restores the values of the plan's assets to what they would have been if the plan had been properly administered.

69.     Plaintiff and the Class are therefore entitled to relief from Defendants in the form of: (1) a monetary payment to the Plan to make good to the Plan the losses to the Plan resulting from the breaches of fiduciary duties alleged above in an amount to be proven at trial based on the principles described above, as required by ERISA § 409(a) (29 U.S.C. § 1109(a)); (2) injunctive and other appropriate equitable relief to remedy the breaches alleged above, as provided by ERISA §§ 409(a) and 502(a)(2)&(3) (29 U.S.C. §§ 1109(a) and 1132(a)(2)&(3)); (3) reasonable attorney fees and expenses as provided by ERISA § 502(g) (29 U.S.C. § 1132(g)), the common fund doctrine, and other applicable law; (4) taxable costs; and (5) interest on these amounts as provided by law; and (6) such other legal or equitable relief as may be just and proper.

## XI. PRAYER

In view of all of this, Plaintiff and the Class pray for judgment against Defendants for a monetary payment to the Plan, injunctive and other appropriate equitable relief, reasonable attorney fees and expenses, taxable costs, interest, and any other relief the Court deems just.

DATED this 1st day of November, 2002.

Respectfully Submitted By

Charles R. Watkins
John R. Wylie
**Susman & Watkins**
Two First National Plaza, Suite 600
Chicago, Illinois 60603
(312) 346-3466

Lynn L. Sarko
Derek W. Loeser
Elizabeth A. Leland
Erin M. Riley
**Keller Rohrback L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, Washington 98101-3052
(206) 623-1900

Gary Gotto
Laurie Ashton
Ron Kilgard
**Keller Rohrback P.L.C.**
National Bank Plaza
3101 N. Central Ave., Ste. 900
Phoenix, AZ 85012
(602) 248-0088

**Counsel for Plaintiff**

COMPLAINT FOR VIOLATIONS OF THE EMPLOYEE
RETIREMENT INCOME SECURITIES ACT; Page 22

JS 44
(Rev. 12/96)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Michael Cokenour

**DOCKETED**
NOV 4 2002

## DEFENDANTS

HOusehold International, Inc., et al.

02C 7921

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  St. Clair County
(EXCEPT IN U.S. PLAINTIFF CASES)  Illi

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT  Cook County, IL
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED.

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Susman & Watkins
Two First National Plaza, Suite 600
Chicago, Illinois  60603  312-346-3466

ATTORNEYS (IF KNOWN)

JUDGE ZAGEL

Magistrate Judge Nolan

## II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)

☐ 1 U.S. Government
Plaintiff

☒ 3 Federal Question
(U.S. Government Not a Party)

☐ 2 U.S. Government
Defendant

☐ 4 Diversity
(Indicate Citizenship of Parties
In Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF
(For Diversity Cases Only)                                        AND ONE BOX FOR DEFENDANT)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original
Proceeding

☐ 2 Removed from
State Court

☐ 3 Remanded from
Appellate Court

☐ 4 Reinstated or
Reopened

☐ 5 Transferred from
another district
(specify)

☐ 6 Multidistrict
Litigation

Appeal to District
Judge from
☐ 7 Magistrate
Judgment

## V. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury — | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | ☐ 423 Withdrawal | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury — | of Property 21 USC 881 | 28 USC 157 | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product Liability | ☐ 650 Airline Regs | ☐ 820 Copyrights | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | | ☐ 660 Occupational | ☐ 830 Patent | ☐ 810 Selective Service |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | ☐ 840 Trademark | ☐ 850 Securities/Commodities/ |
| (Excl Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | Exchange |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | | **SOCIAL SECURITY** | ☐ 875 Customer Challenge |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | **LABOR** | ☐ 861 HIA (1395ff) | 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | ☐ 710 Fair Labor Standards | ☐ 862 Black Lung (923) | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| | | | | ☐ 865 RSI (405(g)) | ☐ 894 Energy Allocation Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting | | ☐ 895 Freedom of |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | & Disclosure Act | **FEDERAL TAX SUITS** | Information Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 740 Railway Labor Act | | ☐ 900 Appeal of Fee Determination |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **HABEAS CORPUS:** | | ☐ 870 Taxes (U.S. Plaintiff | Under Equal Access to Justice |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | ☐ 790 Other Labor Litigation | or Defendant) | ☐ 950 Constitutionality of |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS — Third Party | State Statutes |
| ☐ 290 All Other Real Property | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | ☒ 791 Empl. Ret. Inc. | 26 USC 7609 | ☐ 890 Other Statutory Actions |
| | | ☐ 550 Civil Rights | Security Act | | |
| | | ☐ 555 Prison Condition | | | |

## VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE.
DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

BREACH OF FIDUCIARY DUTY AND ERISA

## VII. REQUESTED IN
COMPLAINT

☒ CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint
JURY DEMAND:  ☒ YES  ☐ NO

## VIII.  This case  ☒ is not a refiling of a previously dismissed action.
☐ is a refiling of case number_____, previously dismissed by Judge _____

DATE  10/31/02

SIGNATURE OF ATTORNEY OF RECORD

UNITED STATES DISTRICT COURT

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

In the Matter of

Michael Cokenour, Plaintiff

v.

Household International, Inc., et al., Defendants.

**DOCKETED**

NOV 4 2002

Case Number:

APPEARANCES ARE HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY(S) FOR:

**02C 7921**

Plaintiff - Michael Cokenour

JUDGE ZAGEL

Magistrate Judge Nolan

| (A) | | | (B) | | |
|---|---|---|---|---|---|
| SIGNATURE | | | SIGNATURE | | |
| NAME Charles R. Watkins | | | NAME John R. Wylie | | |
| FIRM Susman & Watkins | | | FIRM Susman & Watkins | | |
| STREET ADDRESS Two First National Plaza, Suite 600 | | | STREET ADDRESS Two First National Plaza, Suite 600 | | |
| CITY/STATE/ZIP Chicago, Illinois 60603 | | | CITY/STATE/ZIP Chicago, Illinois 60603 | | |
| TELEPHONE NUMBER 312-346-3466 | FAX NUMBER 312-346-2829 | | TELEPHONE NUMBER 312-346-3466 | FAX NUMBER 312-346-2829 | |
| E-MAIL ADDRESS | | | E-MAIL ADDRESS | | |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) 03122790 | | | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) 6189251 | | |
| MEMBER OF TRIAL BAR? | YES ☒ | NO ☐ | MEMBER OF TRIAL BAR? | YES ☐ | NO ☒ |
| TRIAL ATTORNEY? | YES ☒ | NO ☐ | TRIAL ATTORNEY? | YES ☒ | NO ☐ |
| | | | DESIGNATED AS LOCAL COUNSEL? | YES ☐ | NO ☐ |
| (C) | | | (D) | | |
| SIGNATURE | | | SIGNATURE | | |
| NAME | | | NAME | | |
| FIRM | | | FIRM | | |
| STREET ADDRESS | | | STREET ADDRESS | | |
| CITY/STATE/ZIP | | | CITY/STATE/ZIP | | |
| TELEPHONE NUMBER | FAX NUMBER | | TELEPHONE NUMBER | FAX NUMBER | |
| E-MAIL ADDRESS | | | E-MAIL ADDRESS | | |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) | | | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) | | |
| MEMBER OF TRIAL BAR? | YES ☐ | NO ☐ | MEMBER OF TRIAL BAR? | YES ☐ | NO ☐ |
| TRIAL ATTORNEY? | YES ☐ | NO ☐ | TRIAL ATTORNEY? | YES ☐ | NO ☐ |
| DESIGNATED AS LOCAL COUNSEL? | YES ☐ | NO ☐ | DESIGNATED AS LOCAL COUNSEL? | YES ☐ | NO ☐ |